# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

     *Plaintiff*,

vs.              Case No. 07-10142-04JTM

JONEARL SMITH,

      *Defendant.*

## MEMORANDUM AND ORDER

 Presently before the court are defendant Jonearl Smith's motion to suppress (Dkt. No. 676), motion to dismiss counts 1 and 2 of the 5th Superseding Indictment (Dkt. No. 674); and motion to dismiss the indictment based on the doctrine of estoppel (Dkt. No. 715). The court held a hearing on January 28, 2009. For the reasons detailed on the record and summarized below, the court denies the motions.

### I.  Motion to Suppress

#### A.  Background Facts/Arguments

 Although Smith's initial motion contained several alleged grounds for suppression, his counsel conceded at the hearing that only two issues were viable: (1) that the information used to support the affidavit was stale and outdated; and (2) that the warrant was not specific to certain items seized, namely some photographs and North Carolina blue clothing.

 On April 5, 2007, Judge Bostwick reviewed the affidavit of DEA Detective Ron Goodwyn and issued warrants to search Smith's home at 5027 S. Mt. Carmel, Wichita, Kansas,

and to seize Smith's vehicle.  That search warrant was never executed because, according to the government, the officers observed a typographical error in the application, which they wanted to correct.  After noticing the error, the officers obtained a second search warrant on the morning of April 6, 2007, which was executed later that same day.

Detective Goodwyn's affidavit referenced drug deals involving Smith that took place in June 2006.  Smith was indicted in federal court for the 2006 incidents.  Officers were trying to find Smith's vehicle, but were unable to do so until March 2007.  Smith resided at his home with his girlfriend, Theresa Ponds, who shared title of the car with Smith.

### B.  Legal Standard

"A magistrate judge's task in determining whether probable cause exists to support a search warrant 'is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Artez*, 389 F.3d 1006, 1111 (10th Cir. 2004)(quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).  Because searches conducted pursuant to a warrant are favored, a magistrate's decision to issue a warrant is entitled to great deference.  *United States v. Gonzales*, 399 F.3d 1225, 1228 (10th Cir. 2005).

### 1.  Staleness

Smith argues that the warrant is invalid because the majority of the facts that formed the basis for the issuance of the warrant occurred in June and October 2006.  The government counters that the search warrant was not for drugs or drug paraphernalia, but rather for documents related to drug sales and for documents related to personal property.

Probable cause to search cannot be based on stale information.  *United States v. Shomo*, 786 F.2d 981, 984 (10th Cir. 1986).  "Although timeliness of information contained in an affidavit is an important variable, probable cause is not determined simply by counting the number of days between the facts relied on and the issuance of the warrant."  *United States v. Harris*, 2008 WL 4758584 (D. Kan. Oct. 27, 2008).  "Whether the information is too stale to establish probable cause depends on the nature of the criminal activity, the length of the activity and the nature of the property to be seized."  *Id.*

Based on this standard, staleness does not invalidate the warrant.  This case is factually similar to *United States v. Reyes*, 798 F.2d 380 (10th Cir. 1986), in which the court held that the passing of a few months does not render the warrant invalid because the affidavit established a continuing pattern of drug activity.  In this case, the nature of the information sought and the fact that the police had stopped Smith several times established that there was some indication of drug dealing.  As such, the length of time between some of the alleged illegal activity and the issuance of the search warrant does not render it invalid, and Smith's motion to suppress on this ground is denied.

## 2.  Lack of Particularity

Smith argues that although Officer Goodwyn applied for and obtained a search warrant, the warrant did not authorize the seizure of any pictures, documents, or other items portraying or relating to gang membership or activity.  The government counters that Smith's argument must fail under the plain view doctrine.  To establish a valid plain view seizure, the government must show: (1) the officer was lawfully in a position from which to view the object seized in plain view; (2) the object's incriminating character was immediately apparent; and (3) the officer had

3

a lawful right of access to the object itself. *United States v. Soussi*, 29 F.3d 565, 570 (10th Cir. 1994). The government argues that because they were serving a legitimate search warrant for financial documents, officers were in a lawful position to observe the documents and photographs evidencing Smith's alleged gang involvement.

Smith relies primarily on *United States v. Leary*, 846 F.2d 592 (10th Cir. 1998), for its argument regarding a warrant's lack of particularity. In *Leary*, the court found a provision unconstitutionally over-broad based on the fact that it allowed the search of an export business for virtually any document related to generalized statutes that prohibited unlawful experts. *Leary* is clearly distinguishable from the case at hand. A review of the affidavit proves that it was sufficiently specific for its purpose. Further, the items seized were in plain view. Thus, the plain view doctrine would apply, even in the absence of sufficient specificity, and so the seizure of the items would be legitimate.

Although it certainly would have been better if the warrant application and the warrant itself had mentioned the items in question specifically, there does not appear to be bad faith on anyone's part. Additionally, the search warrant was valid at the time it was executed, and all the items seized were in plain view. As such, the motion to suppress is denied.

### 3. Good Faith Exception

For the reasons detailed above, the motion to suppress is denied. Further, because the court is confident in the validity of the warrant on its face, it need not reach the issue of *United States v. Leon*, 468 U.S. 897 (1984) and the good faith exception.

## II.  Motion to Dismiss Counts 1 and 2 of the 5th Superseding Indictment

Count 1 charges Smith with participation in RICO, while Count 2 is conspiracy to participate in RICO. Smith was previously charged with three drug offenses from incidents in June and October 2006, subsequently entered a guilty plea on April 17, 2007, and was sentenced in July 2007 to 150 months (Case No. 06-10237-01-MLB). On July 27, 2007, Smith was initially indicted in the present case. Because the indictment uses those same June and October 2006 drug activities as the basis for the racketeering charge, Smith argues that his double jeopardy rights are violated, and that the charges must be dismissed. Further, relying on *United States v. Perisco*, 620 F. Supp. 836 (D.C.N.Y. 1985), Smith argues that the government must proffer allegations of some type of post-plea unlawful conduct, or post-plea accumulation of evidence, sufficient to establish a second predicate offense or participation in a criminal enterprise. Smith argues that he has not been able to engage in any post-plea unlawful conduct because he has been incarcerated since October 20, 2006.

The government responds that the RICO offenses alleged in Counts 1 and 2 are separate and apart from the predicate acts/convictions in the prior case, and that the current RICO prosecution would not violate the Double Jeopardy Clause. And, after a thorough review of the case history of *Persico*, the government notes on appeal, the court commented that "we entertain serious doubt as to whether evidence of post-plea involvement is necessary to defeat a double jeopardy challenge to RICO convictions based on predicate acts that were the subject of prior guilty pleas." *United States v. Persico*, 832 F.2d 705, 711 (2d Cir. 1987). Thus, the government argues that the existence or non-existence of post-plea behavior does not effect the double jeopardy issue, and that the RICO offenses alleged in Counts 1 and 2 are sound. Further, the

government claims that incarceration would not necessarily prevent a defendant from engaging in post-plea unlawful conduct.

### B.  Legal Standard

The test for determining whether two offenses are the "same offense" for double jeopardy purposes is the "same-elements" test:

> [W]here the same act or transaction constitutes a violation of two distinct statutory provisions, 'the test to be applied to determine whether [prosecution for both violates double jeopardy] is whether each provision requires proof of fact which the  other does not.

*United States v. Johnson*, 911 F.2d 1394, 1397 (10th Cir. 1990)(quoting *United States v. Blockberger*, 284 U.S. 299, 304 (1932)).  Further, the Supreme Court has "indicated that the *Blockberger* test is primarily a rule of statutory construction to help determine legislative intent." *Id.* (referencing *Garrett v. United States*, 471 U.S. 773 (1985)).

The Tenth Circuit has ruled that multiple convictions on the underlying substantive charges, as well as racketeering and RICO conspiracy was permissible, noting that Congress, when enacting RICO, "fully intended to permit cumulative punishments."  *Id.* (citing *United States v. Kragness*, 830 F.2d 842 (8th Cir. 1987)).  Thus, Congress "intended to allow both non-RICO prosecution of a specific racketeering act and a subsequent RICO prosecution using that racketeering conviction as an element of the RICO charge."  *United States v. Persico*, 620 F. Supp. 836 (D.C.N.Y. 1985).  Further, other courts have held that RICO prosecutions were valid where the predicate acts had an expired statute of limitations, or occurred while the defendants was a juvenile.  Thus, while the Tenth Circuit has not specifically addressed this issue, it appears that although a predicate act may not be eligible for prosecution standing alone, it may still be

6

valid for a substantive RICO prosecution.  In sum, it seems that courts find that RICO prosecutions seek to punish the RICO pattern of conduct, and not the underlying offense *per se*.

*United States v. Gambino*, 742 F.Supp. 855 (S.D.N.Y. 1990), is directly on point.  In that case, the court denied a defendant's motion to dismiss based on double jeopardy grounds.  The defendant pled guilty to one count of substantive distribution of narcotics, and some time later, was charged under RICO.  Noting the decisions in other circuits, the court held that the RICO statute, "should be considered distinct for double jeopardy purposes from its predicate offenses. Congress, in passing the RICO statute, intended to create a wholly separate offense to bolster the ability of prosecutors to combat large-scale criminal organizations.  Separate prosecutions with the potential for consecutive penalties were clearly envisioned."  *Gambino*, 742 F. Supp. at 860. Although not binding authority, the reasoning of the New York court is sound and well-reasoned.  As such, this court adopts that reasoning, and denies the motion because it does not violate double jeopardy to charge someone with RICO and conspiracy to engage in RICO relying on prior convictions or guilty pleas.

Public policy supports the denial of the motion because the government should be able to charge criminal behavior as it becomes known.  However, if a criminal enterprise is later discovered, it shouldn't necessarily be barred from prosecuting the enterprise, just because the underlying acts have already been charged.  Further, using guilty pleas as predicate acts for RICO charges is somewhat analogous to using prior convictions to enhancing a sentence on an entirely different conviction.  These reasons bolster the court's findings, and the motion is therefore denied.

### III.  Motion to Dismiss the Indictment Based on the Doctrine of Estoppel

7

Smith argues that collateral estoppel and his prior plea agreement mandate that the present case be dismissed.  The government disagrees with Smith's contentions, and notes that although Smith admitted committing the 2006 drug crimes, there was no mention that he was a Crips gang member, or that the Crips were a criminal enterprise operating in Wichita during the prior prosecution.  Further, the government claims that while the parties were negotiating the plea, the Crips investigation was still in its early stages, and that no information from the investigation was presented to pretrial services.  Additionally, the government states that the "standard" language from typical plea agreements was removed under the "government's agreements" and that the United States did not agree to refrain from filing any additional charges against Smith arising out of the facts forming the basis for the 2006 drug charges.

The government also argues that Smith fails to establish that it violated the previous plea agreement, and further notes that Smith's counsel was aware of the Crips/RICO investigation prior to entering into the plea agreement.  Perhaps most persuasively, the government states that the 2006 case resolved the issues of whether Smith sold drugs on two occasions and possessed drugs with the intent to distribute them on a third occasion, but that it did not resolve the issues of whether Smith was associated with an enterprise that conducted its affairs through a pattern of racketeering.  Accordingly, the issues litigated in the 2006 case were not the same issues presently being litigated.  Further, courts have repeatedly held that prior convictions are admissible to show predicate acts in a RICO prosecution.

*A.  Legal Standard*

When a plea of guilty is based in significant degree on a promise or agreement with the government, such promise or agreement must be fulfilled to maintain the integrity of the plea. *United States v. Hand*, 913 F.2d 854, 856 (10th Cir. 1990). In the Tenth Circuit, a two-step analysis is used to determine whether the United States violated a plea agreement: (1) examine the nature of the promise; and (2) evaluate the promise in light of the defendant's reasonable understanding of the promise at the time of the guilty plea. *United States v.Guzman*, 318 F.3d 1191, 1195-96 (10th Cir. 2003). "Consistent with the contract law-based analysis that governs plea agreement disputes, the party who asserts a breach of a plea agreement has the burden of proving the underlying facts that establish a breach by a preponderance of the evidence." *Allen v. Hadden*, 57 F.3d 1529, 1534 (10th Cir. 1995).

Collateral estoppel is a component of the concept of double jeopardy. It "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson*, 397 U.S. 436, 443 (1970); *accord United States v. Console*, 13F.3d 641, 664 (3d Cir. 1993) ("The double jeopardy clause protects against relitigation of an issue necessarily determined in the defendant's favor by a valid and final judgment.").

A defendant bears the burden of demonstrating that the issue of fact, whose litigation he seeks to foreclose, was actually decided in his favor by a valid and final judgment in an earlier proceeding. *See Dowling v. United States*, 493 U.S. 342, 350-51

9

(1990).  A defendant's burden in that regard is onerous. "A criminal defendant seeking to

benefit from collateral estoppel has the burden of proving 'by clear and convincing

evidence that the fact sought to be foreclosed was necessarily determined by the jury

against the government in the prior trial.'" *United States v. Uselton*, 927 F.2d 905, 907

(6th Cir. 1991) (*quoting United States v. Benton*, 852 F.2d 1456, 1466 (6th Cir. 1988)).

Based on this standard, the motion is denied.  The plea agreement excluded certain key

language, which is present in virtually every single plea agreement, that would have prevented

the government from this prosecution.  Further, the facts to be litigated in this case are entirely

different from the facts in the prior case.  As such, the motion is denied.

IT IS ACCORDINGLY ORDERED this 13th day of February, 2009, that Jonearl Smith's

motion to suppress (Dkt. No. 676), motion to dismiss counts 1 and 2 of the 5th Superseding

Indictment (Dkt. No. 674); and motion to dismiss the indictment based on the doctrine of

estoppel (Dkt. No. 715) are denied.

s/ J. Thomas Marten_____
J. THOMAS MARTEN, JUDGE