IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                     Case No. 07-10142-JTM

JERMAL CAMPBELL, et al.,

    Defendants.

MEMORANDUM AND ORDER

Presently before the court are the following: Motions for Acquittal by Williams (Dkt. No. 1191) and Cornelius (Dkt. No. 1193); and Motions for Acquittal and/or a New Trial by Williams (Dkt. Nos. 1236 & 1237), Smith (Dkt. No. 1238), Wade (Dkt. No. 1240), Frierson (Dkt. No. 1241 & 1242), and Cornelius (Dkt. No. 1245). The court held a hearing on the matter on June 29, 2009, where it denied the initial motions for acquittal (Dkt. No. 1191 and 1193) and took the other matters under advisement. After carefully considering the briefs and the record, the court denies all the motions.

GENERAL LEGAL STANDARDS

*1. Judgment of Acquittal*

Pursuant to Rule 29, the court may set aside the verdict and enter an acquittal. Fed.R.Crim.P. 29(c)(2). However, the court must uphold the jury's verdict of guilty if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Haber*, 251 F.3d 881, 887 (10th Cir. 2001). This Court must determine

whether there is substantial evidence from which a jury might properly find the defendant guilty beyond a reasonable doubt. *United States v. Ailsworth*, 138 F.3d 843, 946 (10th Cir. 1998). This Court "'may neither weigh conflicting evidence nor consider the credibility of witnesses.'" *McKissick*, 204 F.3d 1282, 1289 (10th Cir. 2000)(quoting *United States v. Pappert*, 112 F.3d 1073, 1077 (10th Cir. 1997)).

When considering a motion for judgment of acquittal based on sufficiency of the evidence, this Court must view the evidence in the light most favorable to the government. *McKissick*, 204 F.3d at 1289-90. The burden is high for a party challenging a jury verdict due to a "deep respect for the fact-finding function of the jury." *United States v. Evans*, 42 F.3d 586, 589 (10th Cir. 1994)(quoting *United States v. White*, 673 F.2d 299, 302 (10th Cir. 1982)).

*2. Motion for a New Trial*

A court may grant the defendant a new trial if required by the interests of justice. Fed. R. Crim. P. 33(a); *United States v. Custodio*, 141 F.3d 965, 966 (10th Cir. 1998). A motion for new trial is not regarded with favor and should be granted only with great caution. *United States v. Pearson*, 203 F.3d 1243, 1274 (10th Cir. 2000). The defendant bears the burden of proving the necessity of a new trial. *United States v. Walters*, 89 F.Supp.2d 1206, 1213 (D.Kan. 2000). "[T]he relevant rule is that a new trial should be granted upon '[a]ny error of sufficient magnitude to require reversal on appeal.'" *Id*. (quoting 3 Charles A. Wright, *Federal Practice and Procedure* §556 [1982]).

## ARGUMENTS

Although each defendant filed a separate brief, all defendants joined in each others' motions, and each brief generally raised the same arguments. Therefore, the arguments will be

2

addressed generally as it pertains to all defendants.  However, there are a few unique arguments raised by individual defendants that will also be addressed.

For purposes of these motions, it is helpful to understand each defendant's verdict, and a few background facts. Jonearl Smith was convicted of Counts 2 and 28 (conspiracy to commit a RICO offense and conspiracy to distribute cocaine base), and acquitted of Count 29 (conspiracy to distribute marijuana).  The jury was unable to reach a verdict as to Smith of Count 1, the substantive RICO charge.

Wade was convicted of Count 2 (conspiracy to commit a RICO offense), Count 22 (maintaining a place of drug distribution at 1815 E. 23rd Street), and Count 23 and 28 (each charging conspiracy to distribute crack cocaine); and acquitted of Count 21 (maintaining a place of drug distribution at 505 N. Rock Road), and Count 29 (conspiracy to distribute marijuana). The jury was unable to reach a verdict of Count 1,  the substantive RICO charge.

Cornelius was convicted of Count 2 (conspiracy to commit a RICO offense), Count 28 (conspiracy to distribute cocaine base), and Count 29 (conspiracy to distribute marijuana).  The jury was unable to reach a verdict as to Smith of Count 1, the substantive RICO charge.

Frierson was convicted of Count 2 (conspiracy to commit a RICO offense); Counts 7, 8, 9, 10, 11, 12 (all drug charges); Count 28 (conspiracy to distribute crack).  He was acquitted of Count 29 (conspiracy to distribute marijuana).  The jury was unable to reach a verdict of Count 1,  the substantive RICO charge.

Williams was convicted of Count 2 (conspiracy to commit a RICO offense).  He was acquitted of Count 26 (threatening a witness); and Count 27 (threatening a person).  The jury was unable to reach a verdict of Counts 28 and 29 (conspiracy to distribute crack and marijuana).

The jury began deliberating on March 30, 2009, and returned a verdict on April 15, 2009. After the verdict was read in court, the attorneys were allowed back into the jury room to speak with the jurors. Upon entering the jury room, the presiding juror handed the government a type-written letter, which was later disclosed to the defendants. In the letter, the presiding juror made several comments about the case, and indicated that he would be available and willing to help the prosecution in the future. Particularly, the presiding juror noted that he wanted to help the prosecution "rid this cancer in our society." Several weeks after the return of the verdict, another juror contacted defense attorney Carl Maughan, and indicated that she initially wanted to acquit everyone, but made some decisions with a heavy heart. The email was also disclosed to the court, the rest of defense counsel, and the government.

    1.    <u>The Existence of the Criminal Enterprise</u>

Relying on *United States v. Smith*, 413 F.3d 1253 (10th Cir. 2005), the defendants argue that in order to be convicted of 18 U.S.C. § 1962(d), there must be a finding that an enterprise existed, along with sufficient evidence to support such a finding. The defendants argue that it is clear that the jury could not reach a unanimous decision on whether an enterprise existed based on the verdict and juror's question from April 9, 2009 ("Does the enterprise in Count 1 have to be established before we can come to a verdict on Count 2? . . . ) (Dkt. No. 1221). Alternatively, the defendants argue that they are entitled to a new trial on Count 2 because of the Court's answer to the jury's question that the jury's decision on Count 1 does not control the decision in Count 2.

Regardless of the argument about whether an enterprise was established or not, the court has a problem with the threshold issue implicit in the defendants' arguments. Simply put, the

4

court is troubled by the defendants' conclusions that the jury could not decide whether an enterprise existed. The defendants ask the court to wade in dangerous waters by making a deduction based on a jury question and the verdict that the jury did not establish that an enterprise existed in Count 2, when in reality, that fact simply cannot be established. This court cannot read the jurors' minds, and it is not convinced that the jury did or did not establish an enterprise. That being said, it is inappropriate to engage in speculation as to the reason behind the jury's failure to come to a conclusion on Count 1. Based on the Court's inability to read the jury's minds, this Court refuses to overturn its verdict, based merely on speculation surrounding the final outcome and a question.

Further, no matter what a juror might say after the fact, it cannot be ignored that they deliberated for several weeks, convicted some defendants on some counts, acquitted some on others, and hung on other counts. If nothing else, this verdict shows that the jury was not coerced into any sort of verdict, and that each count was thoughtfully and meticulously scrutinized. Further, the jury was polled after reading the verdict, which should not be ignored. For all of those reasons, the motion is denied on that ground.

Even if this court were to engage in rampant speculation as to the jury's decision regarding the enterprise, the defendants' arguments still fail on the merits. To establish an enterprise, the government must show: (1) an ongoing organization with a decision making framework or mechanism for controlling the group; (2) the various associates function as a continuing unit; and (3) the enterprise exists separate and apart from the pattern of racketeering activity. *See Smith*, 413 F.3d at 1266-67.

The government argues that it established the existence of an enterprise in that numerous witnesses testified concerning the activities of the Crips, the unifying color preferences, tattoos, hand signs and the purpose of the group.  Further, the government argues that it proved that the group was controlled through "violations" and that the associates functioned as a continuing unit.  Finally, the government argues that the enterprise exists separate and apart from the racketeering activity charged in Count 1.  It claims that it need not show that the enterprise has some function unrelated to the racketeering activity, but rather that it had an existence beyond that which is necessary to commit each of the crimes charged as predicate acts.  *United States v. Smith*, 413 F.3d at 1253.  The government claims that it did this by showing that the Crips in Wichita operated beyond that which was necessary to commit the charged predicate acts through gang initiation, meetings, gang rules etc.  For all of those reasons, the government argues that the verdict should not be set aside.  Further, the government claims that even if the jury's verdicts in Counts 1 and 2 seem inconsistent, such verdicts are perfectly acceptable.  *See United States v. Espinoza*, 338 F.3d 1140, 1147 (10th Cir. 2003).

Based on a review of the record, the court finds that there was sufficient evidence set forth at trial that could support the jury's finding of an enterprise.  As such, the motion must fail.

2.      Jury Instructions 31 and 32

Instructions 31 and 32 deal with Count 2 of the indictment, charging RICO conspiracy.  The defendants claim that the instruction is clearly erroneous because it indicated that the government need not prove that the alleged enterprise was actually established.  Based in part upon a juror's email and speculation, the defendants claim that the jury believed that the government did not have to prove that an enterprise existed to convict under 1962(d).  Again, the

court has difficulty believing that such an inference can be made based upon mere speculation about the jury's thoughts.

The Tenth Circuit does not have a pattern instruction for 1962(d). As such, this court wrote the instruction with guidance from the federal jury instructions and other circuits. After carefully reviewing the instructions, the court finds no error. Further, the court notes it is possible to convict someone on a conspiracy charge without convicting them on the substantive charge, and the fact that the jury did so in this case should not cause undue alarm. In fact, defendant Williams was charged only with Count 2 (RICO conspiracy) and not Count 1 (substantive RICO). Finding no error in the instructions, the court denies the motion on this ground.

3.      The Court's Response to the Jury's Question

The juror question at issue is as follows:  "*Does the enterprise in Count 1 have to be established before we can come to a verdict on Count 2 . . .*" The Court responded "*No. Your decision on Count 1 does not control your decision on Count 2. It is possible to find a defendant not guilty on Count 1, but guilty on Count 2, or guilty on Count 1, but not guilty on Count 2. Of course, you may also find a defendant not guilty or guilty on both of those counts as well. These matters are addressed in Instructions 23-28, and 32 and 33. You must read this answer in conjunction with all of the instructions I have given you.*"

The defendants claim that the Court's answer to the jury's question was clearly erroneous, and that any additional answer, beyond referring the jurors back to the instructions, would have been erroneous and warrants a new trial. The defendants claim that during deliberations, the jury was essentially asking if they had to find an enterprise existed before they could convict on

1962(d), and that the court improperly answered "no." The government responds that the Court's answer is a correct statement of the law, and that the answer directed the jury to consider all the instructions.

The court does not interpret the question the same as the defendants. After carefully reviewing the question, the court finds that its answer was a correct statement of the law in that the jury was told that it need not decide Count 1 before moving on to Count 2, and that each count was to be decided separately. Further, the court's answer properly referred the jury back to all the instructions. As such, the motion is denied on this point.

4.      Juror Misconduct

The defendants claim that the foreperson's typed letter and the other juror's email constitute juror misconduct. The defendants are particularly concerned because the letter was typed, and thus written before the verdict was announced. The government argues that regardless of when the foreperson wrote the letter, it was undoubtedly written after the jury heard all the evidence, and was thus appropriate for the juror to render his opinion on the defendants' conduct. Further, the government argues that there is no evidence that the letter was shown to another juror.

As mentioned earlier, this jury was polled after the verdict was read. Further, the verdict was split between hung counts, guilty and not guilty verdicts, which speaks loudly as to the mind set of the jurors. To speculate that the presiding juror became a pseudo-prosecutor based upon his comments in his letter overlooks the verdict that was returned because the presiding juror had to vote to acquit on several charges. As such, the post-trial communication by the jurors

certainly do not rise to the level of misconduct, and do not merit setting the verdict as side. Accordingly, the motion is denied.

5.  Jonearl Smith: Count 28

Smith was convicted of Count 28, which was conspiracy to distribute cocaine base. Smith claims that the only evidence introduced at trial to support that charge was that he sold cocaine to an undercover agent. Smith contends that this evidence is insufficient to sustain a conviction as a matter of law because other Crips were not involved. Additionally, Smith claims that cooperator testimony proved that Crips sold drugs for their own personal benefit. Further, Smith claims that the Court's failure to provide his proposed instruction 5 and 6 constitute grounds for a new trial. Smith's proposed instruction 5 stated:

> *In Count 28 the Government contends that the defendant Jonearl Smith engaged in a conspiracy to distribute a detectable amount of cocaine base. The two Racketeering Acts that defendant is charged with (Racketeering Acts 30 and 31) were drug transactions that took place between Mr. Smith and an undercover law enforcement officer. A government agent cannot serve as the second party in a conspiracy to distribute drugs.*

Smith's proposed Instruction 6 stated:

> *The Government contends in Count 28 that the defendant Jonearl Smith engaged in a conspiracy to distribute drugs. In order to prove this allegation the Government must establish that the conspiracy was with one or more of his co-defendants rather than with the purchaser of the drugs. There can be no conspiracy established by proving a mere buyer-seller relationship between the defendant Jonearl Smith and the purchaser, officer Ron Goodwyn.*

The government responds that Smith's argument must fail because the evidence established that the defendant conspired with fellow Crip gang members to distribute crack cocaine, and not simply an undercover law enforcement officer. Further, the government claims that it established that one of the primary purposes of the Crips in Wichita is to sell illegal drugs,

and that Smith was a drug dealing Crip gang member. As such, the government contends that it established sufficient proof that Smith conspired with fellow Crips to distribute crack cocaine.

Although there was evidence of drug deals between Smith and an undercover police officer, which alone would be insufficient to establish a conspiracy, there was additional evidence about the drug deals in general as it relates to the Crips and Smith, which could uphold the jury's verdict. Further, the court's instructions on interdependence and conspiracy cover the essential elements in Smith's proposed instructions, and the decision not to include them verbatim does not necessitate a new trial.

6.      Jonearl Smith: Withdrawal

The defendant has the burden to prove the defense of withdrawal from a conspiracy. *United States v. Hughes*, 191 F.3d 1317, 1322 (10th Cir. 1999). To withdraw from a conspiracy, "an individual must take affirmative action, either by reporting to the authorities or by communicating his intentions to the coconspirators." *United States v. Powell*, 982 F.2d 1422, 1435 (10th Cir. 1992). Arrest and incarceration by itself are insufficient to constitute withdrawal from a conspiracy. *United States v. Melton*, 131 F.3d 1400, 1405 (10th Cir. 1997).

Smith argues that he was incarcerated for approximately thirteen of the fifteen years that allegedly constituted the conspiracy to distribute cocaine, and that this lengthy period of incarceration constituted withdrawal from the conspiracy. The government argues that there was no evidence that Smith took any affirmative steps to withdraw from the conspiracy. Further, the government claims that Smith wrote a letter to a fellow gang member while in prison, and, once released, sold drugs. Finally, the government notes that the Court still gave the jury instruction

concerning withdrawal. The jury could obviously consider that defense, and decided against it. For those reasons articulated by the government, the motion is denied on this point.

7.      Wade: Multiplicity

Wade claims that Counts 23 and 28 improperly charge him with two crimes for one course of conduct, as both allege conspiracy to distribute the same drug and violate the same statute over the same period of time. *See United States v. Barrett*, 496 F.3d 1079 (10th Cir. 2007) (discussing the test for multiplicity).

> Multiplicity refers to multiple counts of an indictment which cover the same criminal behavior. Although multiplicity is not fatal to an indictment, multiplicitous counts which *may* result in multiplicitous convictions are considered improper because they allow multiple punishments for a single criminal offense. Multiplicitous sentences violate the Double Jeopardy Clause. The test [for multiplicity] is whether the individual acts [alleged in the counts at issue] are prohibited, or the course of [conduct] which they constitute. If the former, then each act is punishable separately. If the latter, there can be but one penalty. Where multiplicitous convictions are found, "the only remedy . . . is . . . to vacate one of the underlying convictions . . . ."

*Id.* at 1095 (internal citations omitted). After reviewing the indictment, it is clear that Counts 23 and 28 cover different periods of time: Count 23 covers the period from January 1, 2006 through October 20, 2006, while Count 28 covers a period of a time unknown until June 27, 2007. Although some of the same time period is covered, the crimes span different times, and thus there the counts are not multiplicitous and the motion is denied.

8.      Wade: Count 22

Wade was charged in Count 22 with maintaining a place for drug distribution at 1815 E.23rd Street. Wade claims that the only evidence physically connecting him to that location was that one officer remembered seeing his car on the street on one day, and that the maintenance of a house for

11

drug distribution requires more than one day. Wade fails to provide support for his argument. Based on a review of the testimony, the court finds that there was sufficient evidence for the jury to reach its verdict. Accordingly, the motion is denied.

9. <u>Wade: Fatal Variance</u>

A "simple variance arises when the evidence adduced at trial establishes facts different from those alleged in the indictment, and triggers harmless error analysis. The defendant bears the burden of proof both to show that a variance occurred and that it was fatal." *United States v. Sells*, 477 F.3d 1226, 1237 (10th Cir. 2007) (internal citations omitted). A variance requires reversal where a defendant can show that it affected his or her substantial rights, that is, where in conspiracy cases the "evidence adduced against co-[conspirators] involved in separate conspiracies was more likely than not imputed to the defendant by the jury in its determination of the defendant's guilt." *United States v. Harrison*, 942 F.2d 751, 758-59 (10th Cir. 1991) (internal citations omitted).

In determining whether a variance substantially affects the rights of a defendant, thus being fatal, the Tenth Circuit reviews three factors. First, whether the "proliferation of separate crimes or conspiracies presented in the case impaired the jury's ability to segregate each individual [conspirator's] actions and the evidence associated with [] his participation." Second, whether "confusion among members of the jury concerning the legal limitations on the use of certain evidence resulted from the variance." Finally, the court considers "the strength or weakness of the evidence underlying the jury's conviction." *Harrison*, 942 F.2d at 758.

Wade claims that the government failed to prove the large schemes outline in the indictment, and that it failed to prove the existence of the Crips and Crips subsets. Further, Wade argues that much of the evidence presented had little to do with him and could confuse the jury. The

government responds that the evidence established that the various Crips subsets worked and conspired together to engage in racketeering activity.

Again, based on a review of the evidence at trial, the court finds that there was sufficient evidence for the jury to reach the verdict that it did, and that the evidence presented does not rise to the level of fatal variance.

10.     Frierson: Due Process Violation

Frierson claims, for the first time, that the government violated his due process rights by destroying or losing evidence, namely drugs. The government responds that the drugs were destroyed pursuant to Sedgwick County Sheriff's Department policy, and that the government instead introduced lab testing of the drugs.

In order for the destruction of evidence to constitute a Due Process violation, the Court must find that the destroyed evidence (1) possessed an exculpatory value that was apparent before the evidence was destroyed and (2) be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means. *California v. Trombetta*, 467 U.S. 479, 489 (1984). Further, if the evidence is "potentially useful" then the defendant must show bad faith on behalf of the destroying agents before a Due Process violation is established. *See Arizona v. Youngblood*, 488 U.S. 51, 57 (1989).

Here, the government correctly points out that the evidence at issue was inculpatory, and not exculpatory. Each of Frierson's arguments concerning the potential defenses are, at best, "potentially useful," which requires that a defendant must prove that the agents acted in bad faith in destroying the items. The testimony was that the items were destroyed consistent with department policy; as such, Frierson's motion must fail.

In sum, for all the reasons stated above and during the hearing, the court denies all the motions.

IT IS ACCORDINGLY ORDERED this 15th day of July, 2009 that the Motions for Acquittal by Williams (Dkt. No. 1191) and Cornelius (Dkt. No. 1193); and Motions for Acquittal and/or a New Trial by Williams (Dkt. Nos. 1236 & 1237), Smith (Dkt. No. 1238), Wade (Dkt. No. 1240), Frierson (Dkt. No. 1241 & 1242), and Cornelius (Dkt. No. 1245) are each denied.

                                                      s/ J. Thomas Marten
                                                      J. THOMAS MARTEN, JUDGE